UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO.: 5:19-cv-00202

JERRY RALPH MOORE, JR. and
BARBARA DIANE MOORE                                                                  PLAINTIFFS

v.

PINE BLUFF MATERIALS CO., LLC and
PINE BLUFF SAND & GRAVEL COMPANY                                         DEFENDANTS

---

### MOTION TO EXCLUDE EXPERT TESTIMONY OF
### ANGELA LEVITAN, Ph.D., CPE

---

Defendants Pine Bluff Materials Co., LLC and Pine Bluff Sand & Gravel Company ("Pine Bluff") now move the Court to exclude portions of the testimony and report by the Plaintiffs Jerry "Butch" Moore and Barbara Diane Moore's expert, Angela Levitan, Ph.D., CPE.

### INTRODUCTION

This case involves claims by the Plaintiffs regarding an incident in which Mr. Moore fell from a conveyor on the M/V Dredge Pine Bluff. The Plaintiffs retained and identified Dr. Levitan as an expert to produce a report consisting of "a kinematics evaluation of Mr. Jerry Moore's fall incident to investigate the causative nature of the post and chain located on the fine sand conveyor." (Ex. A, Levitan Report at 11.) In that report, Dr. Levitan concluded that "Mr. Moore would not have fallen from the fine sand conveyor to the deck below if the post and chain handrail on the steel frame of the fine conveyor had not failed." (*Id*. at 15.) Additionally, Dr. Levitan produced 3D animation models of three different scenarios illustrating how Mr. Moore might have fallen. (*Id*. at 11, *See* Ex. B, 3D animation models.) She used information, including data obtained by the Faro Focus Laser Scanner, photographs post incident, deposition testimony, her dredge

1

inspection, and a photograph taken of Mr. Moore demonstrating the position of his radio and microphone on his life vest prior to his fall, in order to produce the models. (*Id.*)

## ARGUMENT

Federal Rule of Evidence 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The rule gives district courts a 'gatekeeping role' in screening the reliability of expert testimony, *Daubert,* 509 U.S. at 597 . . .." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010). Importantly, an "expert's opinion may not be based on unsupported speculation or conjecture." *ISP Chemicals LLC v. Dutchland, Inc.*, No. 5:08-CV-153, 2011 WL 2651691, at *5 (W.D. Ky. July 6, 2011) (citing *Tamraz,* 620 F.3d at 671). Moreover, the "'*ipse dixit* of the expert' alone is not sufficient to permit the admission of an opinion." *Tamraz,* 620 F.3d at 671 (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).

"Throughout, a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules," such as Rule 403. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). Rule 403 "permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . ..'" *Id.*

Pine Bluff respectfully requests the Court to exclude both the animations depicting Mr. Moore's fall and Dr. Levitan's opinion that Mr. Moore would not have fallen but for the post and chain failing pursuant to Rule 702 and Rule 403.

**A. Dr. Levitan's Animations are Unsupported by the Facts, Data and Her Own Testimony and are Greatly Prejudicial.**

Dr. Levitan produced three 3D model animations depicting Mr. Moore falling head first and landing on his face;[1] yet, Dr. Levitan admits that there are no facts or data supporting this illustration. In her report, Dr. Levitan admits that no one witnessed Mr. Moore's fall. (*See* Levitan Report at 12.) In her deposition, Dr. Levitan admitted that she did not attempt to calculate or illustrate the fall itself. (*See* Ex. C, Levitan Depo. at 40:21-41:2.) Yet, this is exactly what the animations produced by Dr. Levitan depict.

More specifically, throughout her deposition, Dr. Levitan admitted that the animations do not depict the many possibilities of how Mr. Moore could have fallen, or even how she believes he fell. For instance, Dr. Levitan testified that Mr. Moore could have fallen feet first. (*See id*. at 52:6-54:16.) Dr. Levitan also testified that she believes Mr. Moore "at least for a certain amount of time, was holding onto the chain. And it changed his trajectory as opposed to just falling due to gravity." (*Id*. at 40:6-10.) In fact, she admitted that this was the most likely scenario. (*See id.* at 44:22-45:18.) However, this is not depicted in any of the animations, which do not show Mr. Moore holding on to the chain. Overall, Dr. Levitan admitted that there were many specifics about the fall that we do not know, and the "kinematics of the actual fall" were not "needed for her to know." (*Id*. at 54:2-4; 17-18.) Rather, she was only concerned with his pre-fall location, the location of the microphone, and the theory that his pre-fall location had to be near where the microphone ended up after the fall. (*Id*. at 54:18-55:3.) Thus, Dr. Levitan admits that neither she, nor anyone else, knows how Mr. Moore fell. Despite what is depicted in the animations, Dr. Levitan did not even attempt to calculate or illustrate how Mr. Moore fell. Clearly, these

---

[1] To be precise, the first animation shows Mr. Moore falling head first, but does not show him landing.

animations are pure speculation, which is not sufficient to overcome preclusion. *See ISP Chemicals LLC*, No. 5:08-CV-153, 2011 WL 2651691, at *5 (citing *Tamraz,* 620 F.3d at 671). Therefore, there are not sufficient facts or data supporting the animation depicting Mr. Moore falling head first and landing on his face, and the animation should be excluded pursuant to Rule 702(b).

Beyond Rule 702, pursuant to Rule 403, the little probative value provided by these animations is substantially outweighed by the danger of unfair prejudice to Pine Bluff, as well as the danger of misleading the jury. As Dr. Levitan admitted that she does not know how Mr. Moore fell, the animations depicting Mr. Moore's actual fall have little probative value. However, the jury seeing three different depictions of Mr. Moore falling head first and literally landing on his face will greatly prejudice Pine Bluff's case in the eyes of the jury. Moreover, they will likely mislead the jury into believing that those are the only three options as to how Mr. Moore fell, when Dr. Levitan admitted there are other possibilities, such as falling feet first. Cross examination of Dr. Levitan will not erase the ill-informed animation of Mr. Moore falling headfirst (three times over) from the memory of the jury. Therefore, Dr. Levitan's animations should also be excluded pursuant to Rule 403.

### B. Dr. Levitan's Causation Opinion Regarding the Post and Chain is Not Supported by the Facts or Data, Nor is it Based on Reliable Methods.

Dr. Levitan's opinion that "Mr. Moore would not have fallen from the fine sand conveyor to the deck below if the post and chain handrail on the steel frame of the fine conveyor had not failed" is not based on sufficient facts or data as required by Rule 702(b). As explained above, neither Dr. Levitan, nor anyone else, witnessed Mr. Moore fall. Furthermore, Dr. Levitan admitted in her deposition that she did not do any force calculations regarding the force applied to the chain by Butch's body, nor did she attempt to determine the capacity of the post or the post and chain

4

together. (*See* Levitan Depo. at 30:9-19.) In fact, she testified, "It wasn't part of the scope of my analysis." (*Id*. at 30:16.) Thus, without any factual information or calculations driven by data, Dr. Levitan asserts the opinion that if the post and chain had not "failed," Mr. Moore would not have fallen.

Moreover, Dr. Levitan is unable to disprove that Mr. Moore easily could have fallen without breaking the chain and post. Mr. Moore was up on a conveyor, perhaps crouching in an awkward position, with no fall protection, and possibly holding a 3-to-4-foot pry bar that weighed 15 to 20 pounds. (*See* Ex. D, Pls.' Resp. to Pine Bluff's Interrog. No. 8.)[2] It is common sense that, in that circumstance, it is possible that Mr. Moore could have fallen, either over or under the chain, without breaking the chain and post. For the same reasons, even if Mr. Moore did grab the chain as Dr. Levitan speculates, and even had the post and chain been strong enough to hold as Plaintiff claims it should have been, there is no proof that Mr. Moore would not have fallen to the deck anyway, given his obviously imprudent movements on the conveyor. Certainly, Dr. Levitan has performed no calculations or analysis to the contrary. Without any calculations or data regarding the force applied to the chain or the capacity for force against the post and chain, Dr. Levitan's opinion is the result of pure speculation.

The United States Court of Appeals for the Fourth Circuit faced a situation very similar to the one at hand in, *O'Neill v. Windshire-Copeland Associates, LP*, in which the plaintiff appealed the district court's decision to exclude the proposed expert testimony of a professor of biomechanics. In *O'Neil*, the plaintiff sued multiple parties associated with owning an apartment

---

[2] In Mr. Moore's answers to Pine Bluff's interrogatories, Mr. Moore stated that he "got up onto the fine sand conveyor with a pry bar to help get the new bearing into position on the shaft." (*See* Pls.' Resp. to Pine Bluff's Interrog. No. 8.) Mr. Moore never amended this answer. In his deposition, Mr. Moore admitted that his answer to Interrogatory number 8 came from his recollection, even though, on the day of the deposition, he couldn't "remember exactly" whether he had the pry bar with him. (*See* Ex. E, Moore Depo. at 64:3-14.)

complex for negligence when she fell over the rail of one of the apartment balconies, rendering her a quadriplegic. *See O'Neill v. Windshire-Copeland Assocs.*, 372 F.3d 281, 282 (4th Cir. 2004). The plaintiff retained a professor of biomechanics as an expert witness to testify as to what caused the plaintiff's fall. *See id*. at 285. Although the expert admitted that it was not clear what triggered the plaintiff's fall, he opined that it was "much more likely" the wind caused the plaintiff to fall as it was unlikely someone of her athletic skill and ability would lose her balance. *See id*. The Fourth Circuit upheld the district court's decision to exclude the expert stating, "This opinion appears to be based more on supposition than science, especially since [the expert] admitted that the cause of [the plaintiff's] fall was 'not clear.'" *Id*.

Similarly, in the case at hand, Dr. Levitan, also presented as an expert in biomechanics, admitted that no one witnessed Mr. Moore's fall, nor has she done any calculations to determine how Mr. Moore fell, the amount of force put on the post and chain, or the capacity of the post and chain to withstand force. She merely assumes that since the post and chain broke, it must have caused Mr. Moore to fall—without any facts or data to support such speculation. Just as the Fourth Circuit concluded about the biomechanist in *O'Neill*, Dr. Levitan's opinion is "based more on supposition than science . . . ." *Id*. Therefore, Dr. Levitan's causation opinion regarding the post and chain should be excluded pursuant to Rule 702(b).

Additionally, the fact that Dr. Levitan has not attempted to do any calculations regarding the post and chain or Mr. Moore's fall itself shows that her opinion is not based on reliable principles or methods. As discussed above, Dr. Levitan admitted that she did not attempt to calculate or illustrate the fall itself. (*See* Levitan Depo. at 40:21-41:2.) Furthermore, Dr. Levitan admitted that she did not do any force calculations regarding the force applied to the chain by Butch's body, nor did she attempt to determine the capacity of the post or the post and chain

6

together. (*See* Levitan Depo. at 30:9-19.) Solely based on her own subjective speculation, Dr. Levitan asserts that Mr. Moore would not have fallen had the post and chain not "failed." However, the "'*ipse dixit* of the expert' alone is not sufficient to permit the admission of an opinion.'" *Tamraz,* 620 F.3d at 671 (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)). Therefore, Dr. Levitan's causation opinion should be excluded pursuant to Rule 702(c).

## CONCLUSION

In conclusion, both Dr. Levitan's animations and her causation opinion regarding the chain and post should be excluded by the Court. First, Dr. Levitan's animations of Mr. Moore's fall are blatantly unsupported by sufficient facts or data and are greatly prejudicial to Pine Bluff. Secondly, Dr. Levitan's opinion that Mr. Moore would not have fallen had the post and chain not "failed," is also unsupported by sufficient facts or data, in addition to not being the product of reliable principles and methods. Thus, Pine Bluff respectfully requests the Court to exclude both the animations depicting Mr. Moore's fall and Dr. Levitan's opinion that Mr. Moore would not have fallen but for the post and chain "failing" pursuant to Rule 702 and Rule 403.

RESPECTFULLY SUBMITTED this the 3rd day of June, 2022.

WHITLOW, ROBERTS, HOUSTON
& STRAUB, PLLC

*/s/ C. Thomas Miller*
C. Thomas Miller
300 Broadway
P.O. Box 995
Paducah, Kentucky 42002-0995
(270) 443-4516
(270) 442-8247 fax
tmiller@whitlow-law.com

Attorney for Defendants Pine Bluff Materials Co., LLC and Pine Bluff Sand & Gravel Company

7

## CERTIFICATE OF SERVICE

I hereby certify that I have this the 3rd day of June, 2022, electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Brian S. Katz, Esq., brian@brianskatz.com, 2226 Broadway, Suite 1, P.O. Box 2903, Paducah, KY 42002-2903, *Attorney for Plaintiff*

*/s/ C. Thomas Miller*
C. Thomas Miller
