UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

JERRY RALPH MOORE, JR. and
BARBARA DIANE MOORE

    PLAINTIFFS

v.                                        CASE NO.: 5:19-cv-00202-TBR

PINE BLUFF MATERIALS CO., LLC and
PINE BLUFF SAND & GRAVEL COMPANY

    DEFENDANTS

## PLAINTIFFS' ANSWERS TO PINE BLUFF MATERIALS CO., LLC AND PINE BLUFF SAND & GRAVEL COMPANY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Comes now Plaintiffs, Jerry Ralph Moore, Jr. and Barbara Diane Moore (hereafter "Plaintiffs" or "Plaintiff"), by and through counsel and for their Answers to Defendants, Pine Bluff Materials Co., LLC and Pine Bluff Sand & Gravel Company's First Set of Interrogatories would state as follows:

**GENERAL OBJECTIONS:**

1.    Plaintiff objects to each and every request to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

2.    Plaintiff objects to each and every request to the extent Plaintiff seeks confidential, personal, patient health information, and/or other documents, including personal information about persons not party to this lawsuit.

personally taken any written or recorded statements. Additionally, Mrs. Moore periodically met with representatives of Pine Bluff, at their request, following the accident, to update them on how Butch was doing. Butch Moore attended one or perhaps two of these meetings, and the Plaintiffs' sons, Bryan and Shawnn Moore also attended one or more of these meetings.

**INTERROGATORY NO. 8.** In your Complaint you allege that on or about July 10, 2017, you were injured while working as a crew member aboard the M/V DREDGE PINE BLUFF ("the Injury"). Please state the facts and circumstances on the date of and leading up to the time of the Injury and how the Injury occurred, including the reason(s) why you were on the conveyor from which you fell.

**ANSWER:** On the morning of the accident, July 10, 2017, Plaintiff had been at the landing talking to Howard Johnson about the coarse sand conveyor and the fine sand conveyor both of which needed to be worked on. Both conveyors had problems with bearings. This was a common occurrence. Jeff York, Darrel McDonald and Hunter Orenduff were working on the port side coarse sand conveyor. Plaintiff, Terry Smith and Justin Reed went to work on the starboard fine sand conveyor upper downriver bearing. When they got to the dredge, they discussed how they were going to do the work and Plaintiff reminded them to put their locks on the conveyor breakers and do the Lock-out/Tag-out paperwork. Plaintiff then left to go get drinking water and he had to stop at the Dredge Armstrong to get something in the tool room. When he arrived back at the Dredge Pine Bluff he went to the starboard fine sand conveyor and saw that Terry and Justin were having a hard time getting the bearing off because the shaft was worn out. The worn-out shaft was

not a new problem as they had been dealing with it for months and using various work arounds to keep it operating. Because of the difficulty they were having, Plaintiff called Howard Johnson to see if they could get a new shaft to go with the new bearing. Howard Johnson told him to measure the shaft and call him back. When he got the measurement for Mr. Johnson, he told Plaintiff not to do anything to the starboard conveyor until he called him back because he was trying to get a new shaft. As Plaintiff walked over to the port side to see how the other crew members were doing, Howard Johnson called him right back and said it would be the next day before he could get a new shaft and to go ahead and put the new bearing on the old shaft.

Plaintiff then went into the sample room to make sure the locks were on the conveyors. There was a lock on the starboard conveyor but the bottom of the breaker on the port conveyor was broken. Plaintiff then went to the engine room with Darrell McDonald to confirm they had locked out the breaker there for the port conveyor. When they arrived, they saw that the breaker was off but there was no lock on it, so Darrel McDonald put a lock and tag on it while Plaintiff was there. Plaintiff then left to go and assist Terry and Justin with the starboard conveyor. Plaintiff saw Terry and Justin working on the conveyor and walked towards them near the back of the sand screws. Plaintiff then got up onto the fine sand conveyor with a pry bar to help get the new bearing into position on the shaft. This was difficult because the existing shaft on which they were trying to put on the new bearing was very worn out. Once on top of the conveyor, Plaintiff was positioning himself to assist with the installation of the new bearing with the pry bar when the hand rail gave way, causing him to fall.

**The hand rail on top of the conveyor was inadequate, faulty, not properly designed, and not properly secured, causing an unsafe condition, which caused and/or contributed to Plaintiff's injury. Moreover, the dredge itself was negligently designed, in that workers were frequently required to get on top of the conveyor systems to perform repairs, yet there was no ability to wear fall protection because there was nothing to tie off on while on top of the conveyor, thereby rending the wearing of fall restraint ineffectual. The fine sand conveyor on the dredge was further negligently designed because it had no walkway, so performing repairs on the various components that frequently needed repair and/or replacement required that the worker walk along the conveyor itself. This negligence and these conditions created an unsafe work area for Plaintiff and rendered the vessel unseaworthy.**

**Discovery is ongoing, and Plaintiff reserve the right to amend this response as additional information is obtained.**

**INTERROGATORY NO. 9.** Please state whether or not, on the date of this Injury, the Defendant had a safety policy concerning the type of work performed by the Plaintiff at the time of the Injury and, if so, state what that policy was and state whether Plaintiff complied with that policy.

**ANSWER: Yes, at the time of the accident, Plaintiff was assisting with changing out a bearing on the fine sand conveyor. The fine sand conveyor is higher than 6 feet off the deck of the Dredge. The Pine Bluff policy that was taught to Plaintiff, Jerry Butch Moore, and that Mr. Moore taught to others, was that fall protection/fall restraint had to be worn when working at a height above 6 feet off of the deck, if there was no hand rail present. Working on top of the fine sand conveyor did not require the use of fall protection/fall restraint under**

incarceration and your release date; the institution in which you were incarcerated; and the offenses for which you were incarcerated.

**ANSWER:** None.

Respectfully submitted,

KATZ LAW

/s/   Brian S. Katz
BRIAN S. KATZ, ESQ.
2226 BROADWAY, SUITE 1
POST OFFICE BOX 2903
PADUCAH, KY 42002-2903
(270) 575-3939
brian@brianskatz.com

CERTIFICATE OF SERVICE

The undersigned certifies that copies of the foregoing were served via e-mail and U.S. Mail, postage prepaid, this 23rd day of October, 2020, to the following counsel of record:

C. Thomas Miller, Esq.
WHITLOW, ROBERTS, HOUSTON & STRAUB, PLLC
300 Broadway
P.O. Box 995
Paducah, KY 42002-0995
*Attorney for Defendants*

/s/   Brian S. Katz
BRIAN S. KATZ

## VERIFICATION

I, Jerry Ralph Moore, Jr., have read the foregoing Answers and they are true and correct to the best of my knowledge, information and belief.

_____
JERRY RALPH MOORE, JR.

## VERIFICATION

I, Barbara Diane Moore, have read the foregoing Answers and they are true and correct to the best of my knowledge, information and belief.

_____
BARBARA DIANE MOORE